BERRIGAN, District Judge,
specially concurring:'
I agree entirely with the reasoning and result of the majority opinion with respect to the claims of insufficient evidence, government reliance on false testimony and/or concealment of material evidence, the admission of the telephone logs, the denial of a voice expert under the circumstances, the admission of extrinsic evidence, the refusal to admit the criminal record of the government informant and the sentencing disparity. I concur only reluctantly with respect to the denial of a continuance. I find that counsel’s request for a continuance was a reasonable one which should have been granted. Having been denied the continuance, however, the defendant was obliged to establish that he had been seriously prejudiced. Only reluctantly again, I find that that level of prejudice has not been shown.
The defendant initially pled guilty to the indictment, but the plea was later vacated by this court. Currently appointed counsel, Julie Ann Epps, represented Scott on the last segment of that appeal. The mandate was issued on April 13, 1993 and was lodged with the district court on April 22,1993. The trial judge set a date a month later, on May 24, 1993. Under the Speedy Trial Act, 18 U.S.C. § 3161 et seq., the trial had to be set within 70 days,.or as late as June 21, 1993, in this case. Around April 30, 1993, counsel agreed to be appointed for the trial. At the same time, Epps spoke to the prosecutor who offered access to the discovery materials. Sig *1399 nificantly, the prosecutor also tendered a proposed plea bargain.[1]
Scott was incarcerated in Georgia at the time his conviction was reversed. On April 30, Epps sent him a letter containing the proposed plea offer. Also on April 80, counsel sent an agreed upon order to the prosecutor to have Scott returned to the jurisdiction. That order was signed on May 7. However, the defendant apparently “got lost” in transit. It is undisputed that as of May 18, six days before trial, the defendant had not been brought to the jurisdiction and Epps had not been able to communicate with him even by telephone. On May 18, counsel filed a motion for continuance, stating that because of her inability to contact Scott, she was unable to learn possible factual or legal defenses, what witnesses might be needed and what research needed to be done. The motion also cited the other case commitments she had, several of which were on an appointed basis. The government did not oppose the motion for continuance.
On the evening of May 18, Scott finally arrived in the jurisdiction. He apparently rejected the plea bargain. Over the next several days, Epps did attempt to prepare for trial, but on the morning of trial, she reargued the motion for continuance. She listed in detail the investigation' and preparation that still needed to be done. Among other stated intentions, she said she wanted time to obtain an expert on voice analysis to challenge the voice identification on the tape. The government opposed the continuance and it was denied. The trial judge stated that it was a “fairly simple drug case” and the defendant and counsel had known of the trial date for three and a half weeks.
As the majority opinion points out, the grant or denial of a continuance is within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion.
The trial was set for less than four weeks after counsel was appointed. Arguably, that time frame was too short from the outset. This was an appointed case and counsel had substantial other commitments on an appointed basis of which the trial judge was aware. The scene of the alleged crime was 80 miles away. Several of the key government witnessed, alleged co-conspirators of the defendant, were located in various prisons throughout the region. This may have been a “simple cáse” when the alleged offense took place but it was not a simple case to investigate and prepare.
Compounding counsel’s problems was the offer of a plea bargain almost simultaneously with her appointment. Unfortunately, Scott was not available for a prompt consultation, through no fault of his lawyer. Epps was left in the difficult position of not knowing if investigation and preparation would even be necessary. As an appointed counsel, Epps necessarily had to have some concern over expending time and money at public expense since she would only be reimbursed to the extent ordered by the judge. Noteworthy is that the trial judge did later refuse to approve all her time and expenses on this ease, as well as another appointed case, claiming that money was “tight” and other lawyers would have handled the eases at less cost.
The final and most serious complication was the failure of Scott to be returned to the jurisdiction until the evening of May 18, allowing only five full days before trial, two of which were a weekend. Only as of the 18th could counsel confer with Scott, discuss the proposed plea offer, prepare a theory of the case and support for his defense. While the government did provide discovery materials at an earlier date, those materials could only be put in context once Epps had access to her client. Additionally, considering the distance to the alleged crime scene and the difficulty gaining access to the incarcerated co-conspirators, counsel was not unreasonable in not pursuing a ‘wild goose chase’ investigation before she had the opportunity to confer with the defendant. His arrival, only five days before trial, made such an investigation then unrealistic. “[Cjircum-stanees beyond an attorney’s control that prevent him from adequate trial preparation merit granting continuance motions on Sixth *1400 Amendment grounds.” United States v. Gentry, 839 F.2d 1065, 1073 (5th Cir.1988).
Nevertheless, the defendant is required to establish prejudice when a continuance has been denied. This requirement also creates a dilemma for an indigent defendant and his appointed counsel. Commonly, the way to establish such prejudice is to conduct the investigation, post-trial, that the defense wished time to pursue pretrial. An indigent defendant, however, does not have the resources to make such an investigation. Likewise, it is unlikely that appointed counsel could bill for such post-conviction investigatory work, even if counsel had the time and resources to conduct it.
The majority has rightly pointed out that counsel in this case failed to show what a further investigation would have uncovered. In particular, the majority focused on Epps’ request for a voice expert. In order to obtain a continuance to secure a witness, the defendant must show that he exercised “due diligence” in securing the attendance of the witness, that the witness would provide “substantial favorable evidence” and that the denial of the continuance would “materially prejudice” the defendant. United States v. Rodriguez, 15 F.3d 408, 411 (5th Cir.1994). Counsel in this case was only able to offer conjecture — that given more time, she could have been able to locate an expert on voice analysis who could help her with the tapes. She named no such expert not could she claim the expert would have testified favorably. She failed to meet the standard required, but I question whether that standard is reasonable in light of Scott’s indigence and the limitations upon appointed counsel once a continuance is denied.
The ease against Scott was not compelling. A voice expert favorable to the defense. would have been powerful evidence at least as to the substantive counts of distribution. The FBI agents who testified did not see the defendant engaged in any illegal sales. Their undercover agent, Willie Grady, allegedly participated in the two transactions but he did not testify. The tape recordings of the transactions include conversations with a number of people, in and around the store, all out of view of the FBI agents. Grady could have obtained the cocaine from any number of these people. The conversations themselves are garbled. While Grady does refer to a “Charlie” on the tape, Grady did not testify and did not affirm that this “Charlie” was in fact Scott. Grady was a drug addict himself who was paid nearly $60,000 by the government for his undercover work. His compensation depended on successful sales and he had a criminal record, including felony convictions and convictions for fraud.
Only a few sentences were spoken on the tapes by the voice that the government identified as Scott’s. The only identification of his voice came from FBI Agent Fuelling who claimed he could “recognize” it. This recognition was based on a 15-minute interview Fuelling had with Scott six months after the transactions. Fuelling did not speak to Scott at any time around the time of the incidents. A voice expert, favorable to the defense, would have challenged the agent’s lay opinion, the primary evidence connecting Scott to the distribution counts.
As stated at the outset, I am concurring with the majority decision, but do so reluctantly, accepting that under the binding case-law Scott has failed to establish the requisite prejudice necessary to warrant a reversal of his conviction. But I am concerned about these standards and whether they “do equal right to the poor” as well as to those who can afford legal and investigatory services. 28 U.S.C. § 453. In Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), Justice Douglas spoke of those who undertake indigent representation:
... it is not only a matter of ability. An attorney must be found who is prepared to spend precious hours — the basic commodity he has to sell — on a ease that seldom fully compensates him and often brings him no fee at all. The public has no conception of the time and effort devoted by attorneys to indigent cases.
Id., 408 U.S. at 256, n. 21, 92 S.Ct. at 2735, n. *1401 21,[2]
We too must be mindful.

. The details of the proposal are not disclosed in the record.

. Quoting from B. Prettyman, Jr.; Death and the Supreme Court at 296-297 (1961).